39898.   GOLD v. PIONEER FUND, INC.

DECIDED MAY 9, 1963—REHEARING DENIED MAY 29, 1963.

*Buchanan, Edenfield & Sizemore, W. Dan Greer*, for plaintiff in error.

*Powell, Goldstein, Frazer & Murphy, B. D. Murphy, Robert E. Coll*, contra.

FRANKUM, Judge.   Henry Gold brought an action of trover against Pioneer Fund, Inc. to recover from the defendant two described certificates representing 174 shares of common stock of the defendant corporation of the alleged value of $3,921.96, to which the plaintiff claimed title or a valuable interest therein. The defendant being a nonresident corporation, substituted service was had by service of process on the Secretary of State pursuant to a "Consent to Service" filed with the Secretary of State

under the provisions of Section 10 of the act approved February 26, 1957 (Ga. L. 1957, pp. 134, 158; *Code Ann.* § 97-111). Defendant filed a traverse to the entry of service and a plea to the jurisdiction. The former of these defensive pleadings was dismissed by a consent order providing: "that defendant's consent hereto shall not be taken to admit the jurisdiction of this court over its person in this action; that neither such consent nor this order shall in any way prejudice defendant's right to insist upon its plea to the jurisdiction in this action; that no entry of service made in this action shall be taken as determining or implying that the Secretary of State of Georgia or anyone delegated by the Secretary of State of Georgia is in law or in fact the agent of defendant for service in this action; that the question whether such agency exists in law or in fact is reserved for determination at the trial of defendant's plea to the jurisdiction in this action; and whether or not this court has jurisdiction over the defendant is reserved for determination at the trial of defendant's plea to the jurisdiction in this action." Issue was thus joined on the plea to the jurisdiction. Thereafter, the court, after hearing evidence and taking the matter under advisement, entered an order and judgment sustaining the defendant's plea to the jurisdiction and vacating the service. This order is the subject of assignment of error here.

Two questions are presented by the assignment of error. First, is the scope of the "Consent to Service" filed by the defendant with the Secretary of State as Commissioner of Securities under Section 10 of the Georgia Securities Act of 1957 sufficiently broad to encompass a trover action to recover possession of shares of stock issued by the defendant and allegedly converted by the defendant? Secondly, if service of process in a trover action under the aforesaid consent was not sufficient to make the defendant subject to the jurisdiction of the trial court, was such service nevertheless sufficient under the provisions of the general corporation act, *Code Ann.* § 22-1507, on the theory that the defendant, a nonresident foreign corporation, was "doing business" in Georgia?

■ The answer to the first question depends upon a consideration of the purpose for which the defendant's consent to service

filed with the Secretary of State as Commissioner of Securities was given. Under the terms of the act such consent is given to the service of process in actions "arising out of or founded upon the sale of any securities in violation of" the act. In brief, the act provides for the registration of certain types of securities with the Commissioner under regulations issued by him and prohibits the sale of unregistered securities except those specifically exempted from its provisions by the act; provides for the registration of dealers and salesmen; forbids the use of false and misleading advertisements or statements or representations in the solicitation of sales and declares that the making of any material false statement or representation in any application, financial statement, or other document required to be filed with the Commissioner, or the employment of any deceit, scheme or artifice to defraud or the engaging in any act, practice or course of business which operates, or which would operate as a fraud or deceit upon a purchaser of stock shall be a fraudulent practice and unlawful, and finally forbids as fraudulent any representation to a prospective purchaser of stock that the registration of any security under the provisions of the act means that the Commissioner has passed in any way upon the merits of such securities. The act further gives the Commissioner the power to enjoin violations of the act and gives a right of action to purchasers of stock sold in violation of the act or in violation of any order issued by the Commissioner under the provisions of the act against the person making such sale, and every director, officer, salesman, or agent of the seller who participated or aided in any way in the making of the sale, to have the sale declared void and to recover the full purchase price paid, together with either the interest at the rate specified in the security or at 5% per annum in the case of non-interest bearing obligations. *Code Ann.* §§ 97-113, 97-114.

Upon careful consideration of the act it is clear that its sole purpose is to protect investors in securities against fraud and misrepresentation by issuers and by sellers as to the value and soundness of the securities and to prevent the sale of worthless or unsound securities on the open market in this State. The act specifically provides that the consent to service shall be effective for "actions arising out of or founded upon the sale of any

securities in violation of" the act, and it cannot be construed as a consent to service in all kinds of actions that might be brought against the issuer or its agents, but only is a consent to service in suits brought to recover the purchase price paid by the purchaser upon the buyer's rescission of the contract of purchase of securities sold by the defendant in violation of the act. Clearly then a statutory trover action brought to recover stock certificates from the defendant which were bought by the defendant in good faith and without misconduct on its part cannot come within the terms of the consent so as to render a nonresident defendant with no agent or place of doing business in Georgia subject to the jurisdiction of our courts.

This ruling is in accord with the ruling made by the Supreme Court of Minnesota in Boyum v. Massachusetts Investors Trust, 215 Minn. 485 (10 NW2d 379). There the suit was for the conversion by the defendant of three trust certificates, substantially the same as the action in this case. While the court held that the defendant was not doing business in Minnesota, the final rationale of the decision did not, in reality, turn upon that facet of the case at all, but upon the court's interpretation of the scope of the consent to service filed by the nonresident defendant with the Minnesota Commissioner of Securities. The court, in interpreting the act, determined that the purpose of the act was to protect the public against fraud in the sale of securities, and that an action to recover for the wrongful conversion of the securities did not arise out of any duty impliedly arising under the contract of sale or under the provisions of the Minnesota Blue Sky Law, but was a right of action created by other provisions of law, and that therefore the consent to service given under the act was not broad enough to encompass consent to service of process in an action for conversion of the securities. This case is not distinguishable on its facts from that case, and while we are not bound by that ruling, it is persuasive authority that the ruling which we have made is correct. See 13 Am. Jur. 442, Corporations, § 376.

■ The defendant, Pioneer Fund, Inc., is an investment company incorporated under the laws of the State of Delaware and having its sole office and place of doing business (except for its

statutory office in Delaware) at 60 State Street, Boston, Massachusetts. It does not have any office or place of business in the State of Georgia, nor does it have any employee or agent residing in Georgia or soliciting business in Georgia. It does not and never has solicited orders or sold its shares directly to the public in the State of Georgia, but all of its shares of stock are sold through an independent Delaware corporation, Fund Research & Management, Inc., pursuant to an exclusive underwriting contract by the terms of which said underwriter is given "the exclusive right and option to purchase shares of the Capital Stock of Pioneer for sale to investors either directly or indirectly through other broker-dealers. The Underwriter is not required to purchase any specified number of shares of stock," but may under the terms of the agreement purchase only a sufficient number of shares as may be necessary to fill orders received from investors and dealers. It appears that the underwriter may sell directly to investors, but the bulk, if not all, of the sales of defendant's stock in Georgia were made through dealer's sales agreements entered into between Fund Research & Management, Inc., the underwriter, and various independent dealers in securities. Pioneer Fund, Inc., the defendant, was not a party to these dealers' sales agreements entered into between Fund Research & Management, Inc. and the various dealers. Under the foregoing facts Pioneer Fund, Inc. was not doing business in Georgia so as to be subject to service of process under the provisions of the act approved January 31, 1946 (Ga. L. 1946, pp. 687, 688; Code Ann. § 22-1507). *Vicksburg, Shreveport &c. R. v. DeBow*, 148 Ga. 738 (98 SE 381); *Southeastern Distributing Co. v. Nordyke &c. Co.*, 159 Ga. 150 (125 SE 171); *Redwine v. Dan River Mills*, 207 Ga. 381 (61 SE2d 771); *Williams v. American Refrigerator &c. Co.*, 91 Ga. App. 522 (86 SE2d 336). Pioneer was, at most, merely selling its stock to the underwriter, and the underwriting contract did not make the underwriter an agent of the defendant as a matter of law. Fraser v. Home Tel. &c. Co., 91 Wash. 253 (157 P 692, 694). See *Davis v. Metropolitan Life Ins. Co.*, 196 Ga. 304, 319 (26 SE2d 618).

It follows that the trial judge did not err in sustaining the defendant's plea to the jurisdiction, and in vacating the service of process.

860

*Judgment affirmed. Nichols, P. J., and Jordan, J., concur.*

ON MOTION FOR REHEARING.

FRANKUM, Judge. In his motion for a rehearing plaintiff in error contends that this court overlooked his contention that defendant's consent to service of process filed under Section 14 of the Georgia Security Law of 1920 (Ga. L. 1920, pp. 250, 258-60), which designated the Secretary of State of Georgia as the defendant's true and lawful attorney for service of process, which contained no restrictive language as to the type or nature of actions which might be brought against defendant, was an irrevocable power of attorney under the provisions of the said act and that the service had in this case was valid under that consent, even though it might not have been valid under the consent filed pursuant to the 1957 act. This contention is without merit. The latter act expressly repealed the former one. Conceding for the moment that the consent to service filed under the former act would have been broad enough to encompass service made in the present action, the repeal of the statute under which it was filed rendered that consent void and of no effect thereafter. This is true because the repeal of a statute without reservation takes away all remedies given by it and even defeats all actions and proceedings pending under it at the time of its repeal, and this is especially so where the statute repealed is one creating a cause of action. 82 CJS 1012, Statutes, § 439a. *Western Union Tel. Co. v. Lumpkin,* 99 Ga. 647 (26 SE 74); *Fulton County v. Spratlin,* 210 Ga. 447 (1) (80 SE2d 780); *Fulton Bag &c. Mills v. Williams,* 212 Ga. 783 (3) (95 SE2d 848). Here the cause of action, if any the plaintiff has, did not even arise until long after the repeal of the former law and the enactment of the superseding statute. Certainly, as to any cause arising after the repeal of the former law, the consent to service filed thereunder is a nullity.

*Rehearing denied. Nichols, P. J., and Jordan, J., concur.*